# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | **JUDGE RICHARD L. SPEER** |
| Christopher/Wendy Frick | ) | |
| | ) | Case No. 09-3043 |
| Debtor(s) | ) | |
| | ) | (Related Case: 08-36254) |
| H. Park Partners, LLC | ) | |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Christopher Frick | ) | |
| | ) | |
| Defendant(s) | ) | |

## DECISION AND ORDER

This cause comes before the Court on the Plaintiff's Motion for Summary Judgment. (Doc. No. 18). The Plaintiff brings its Motion for Summary Judgment in support of its Complaint to Determine the Dischargeability of a Particular Debt pursuant to 11 U.S.C. § 523(a)(6). (Doc. No. 1). The Defendant filed an objection to the Plaintiff's Motion. (Doc. No. 19). Each of the Parties also filed memoranda and documentation in support of their respective positions. (Doc. No. 18, 19 & 20). The Court has now had the opportunity to review the arguments made by the Parties, as well as all of the evidence presented in this case. Based upon this review, the Court finds that, for the reasons explained herein, the Plaintiff's Motion for Summary Judgment should be Granted.

H. Park Partners, LLC v. Christopher Frick
Case No. 09-3043

## FACTS

The Debtor, Christopher Frick (hereinafter the "Debtor"), was an owner and the president of a business entity which operated under the name of Kizer Restaurants, Inc. In his capacity as president of Kizer Restaurants, the Debtor entered into a lease agreement to rent space from which a 'bar and grill' could be operated. From 1996 until January 1, 2005, the leased space was used by Kizer Restaurants to operate its business operations. During its tenancy, Kizer Restaurants made improvements, both permanent and non-permanent, to the leased property. At the time Kizer Restaurants ceased its business operations in 2005, the Plaintiff, H. Parks Partners, LLC (hereinafter the "Plaintiff"), owned the leased property.

In 2004, because of issues which arose with the leased space, the Plaintiff and the Debtor, acting on behalf of Kizer Restaurants, entered into an agreement to terminate their lease contract. In order to facilitate the surrender and vacation of the rental space, Kizer Restaurants hired a third party to remove its personal property, including the non-permanent improvements it had made to the leased property. During this process, other parties, such as beer vendors, also removed property which they had supplied to Kizer Restaurants.

After Kizer Restaurants and the Debtor were no longer in possession of the leased space, the Plaintiff commenced an action in state court, alleging that the Debtor breached its lease agreement by failing to surrender the property in good condition and repair and that the Debtor had, in his individual capacity, willfully and wantonly intended to cause damage to the property. On the latter allegations, a bench trial was held, with the court thereafter entering judgment against the Debtor, in his personal capacity, in the amount of $75,000.00 for damages caused to the Plaintiff's property.[1]

---

[1] *H. Parks Partners, L.L.C. v. Frick*, Case No. 2006CV327, July 7, 2008, unreported.

H. Park Partners, LLC v. Christopher Frick
Case No. 09-3043

In rendering judgment against the Debtor, the state court made the following findings of fact:

(1) The Debtor, "Christopher Frick and his agents were in sole possession of the keys to the leased premises and had sole occupancy thereof until the middle of January 2005." (Doc. No. 18, Ex. 1, ¶ 3).

(2) "the leased premises sustained malicious damage as a result of the Defendants vacating the premises, which damage was intentionally willfully and wantonly malicious." *Id.* at ¶ 4.

(3) the Debtor, "Christopher Frick is individually liable and responsible for the intentional and malicious damage to the leased premises as the act was intended in [sic] to punish the Plaintiff landlord." *Id.* at ¶ 5.

(4) "Judgment should be entered against Christopher Frick individually for the damage was caused by him and his agents intentionally in the total amount of $75,000.00." *Id.* at ¶ 6.

For these findings, the court pointed out that they concerned with and were limited to the Plaintiff's "specific allegations of intentional destruction of property primarily by Christopher Frick individually, and as such is not an action for breach of contract of the lease agreement." *Id.*

The Debtor appealed the judgment rendered by the state court. On appeal, the state-appellate court upheld the judgment of the trial court, finding that there was "competent, credible evidence to support the conclusion that the damage to the property 'was intentionally, willfully and wantonly malicious[.]'"[2] (Doc. No. 18, Ex. 2, ¶ 23). In addition, the appellate court rejected the Debtor's contention that the trial court had erred in holding him vicariously liable for the actions of independent contractors and intervening actors by virtue of a master/servant relationship. In so holding, the appellate court stated:

---

[2] *H. Parks Partners, L.L.C. v. Frick*, 181 Ohio App.3d 691 (2009).

Page 3

H. Park Partners, LLC v. Christopher Frick
Case No. 09-3043

> The trial court's judgment, however, is not based upon vicarious liability. The trial court imposed liability on appellant based upon a conclusion that 'Christopher Frick [the Debtor] order the destruction of this property.' Frick was on a mission of his own: 'As the Court previously concluded, these actions were not the actions of the corporation nor Christopher Frick acting as president, but rather on a mission of his own.'

*Id.* at ¶ 28.

On November 14, 2008, the Debtor filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. The Plaintiff then commenced this proceeding, seeking a determination that the judgment of the state court, awarding it $75,000.00, was a nondischargeable debt, having arisen from conduct on the part of the Debtor that was, within the meaning of the exception to dischargeability contained in 11 U.S.C. § 523(a)(6), both willful and malicious.

## DISCUSSION

Before this Court is the Plaintiff's Motion for Summary Judgment. In its Motion, the Plaintiff seeks a determination that, as set forth in its complaint to determine dischargeability, the state-court judgment it holds against the Debtor in the amount of $75,000.00 is a nondischargeable debt pursuant to § 532(a)(6) of the Bankruptcy Code. Under 28 U.S.C. § 157(b)(2)(I), a determination as to the dischargeability of a particular debt is deemed to be a core proceeding, thereby conferring on this Court jurisdiction to enter final orders and judgments. 28 U.S.C. § 157(b)(1).

In a case such as this brought under Chapter 7 of the Bankruptcy Code, the aim of the debtor is to obtain a discharge. *See, e.g., In re Barcelo*, 313 B.R. 135, 149 (Bankr. E.D.N.Y. 2004). Generally, a discharge entered by the court operates to permanently enjoin creditors from any act to collect on a prepetition obligation. 11 U.S.C. § 524; *Bessette v. Avco Financial Services, Inc.*, 230 F.3d

Page 4

439, 444 (1st Cir. 2000). But, for reasons of public policy, Congress placed certain categories of debts beyond the scope of the bankruptcy discharge.

One of the categories of nondischargeable debts are those which arise as the result of a debtor's morally reprehensible conduct, thus implementing a primary policy goal of the Bankruptcy Code – that of limiting its benefits to only the honest, but unfortunate debtor. *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *O'Brien v. Sintobin (In re Sintobin)*, 253 B.R. 826, 831 (Bankr. N.D.Ohio 2000). Section 523(a)(6), as cited by the Plaintiff, serves as a cornerstone of this policy by excepting from discharge any debt which is shown to have arisen as the result of a debtor's "willful and malicious" conduct. In full, this provision provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

As with other exceptions to dischargeability, it is the movant's burden to establish, by at least a preponderance of the evidence, the applicability of § 523(a)(6). *Grange Mut. Cas. Co. v. Chapman (In re Chapman)*, 228 B.R. 899, 906 (Bankr. N.D.Ohio 1998). Because the statute is written in the conjunctive, this means demonstrating that the debtor's conduct was both "willful" and "malicious." *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 167 (Bankr. N.D.Ohio 2003). In making this assessment, two overall principles offer guidance. First, the willful and malicious standard of § 523(a)(6) is a stringent one. *CMEA Title Agency, Inc. v. Little (In re Little)*, 335 B.R. 376, 383 (Bankr. N.D.Ohio 2005). Second, "discharge exceptions are to be narrowly construed in favor of the debtor." *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 306 (6th Cir. B.A.P. 2004).

Page 5

Although distinct concepts, both the "willful" and "malicious" elements of § 523(a)(6) look to the mental state of the debtor so that "only acts done with the intent to cause injury – and not merely acts done intentionally – rise to the level of a 'willful' and 'malicious' injury for purposes of § 523(a)(6)." *Kennedy v. Mustaine (In re Kennedy)*, 249 F.3d 576, 581 (6th Cir. 2001). Normally, this makes summary judgment an inappropriate procedural device for adjudicating matters brought under § 523(a)(6).

Under Federal Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7056, summary judgment can only be rendered "if . . . there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Material facts are those facts defined by the substantive law and that are necessary to apply it." *Stamtec, Inc. v. Anson Stamping Co.*, 346 F.3d 651, 654 (6th Cir. 2003). Hence, by placing the mental state of a debtor directly at issue, material facts concerning a debtor's subjective intent will often be disputed in an action brought under § 523(a)(6). An assessment of a debtor's intent, however, requires the Court, as the trier-of-fact, to make credibility determinations and weigh evidence, functions which are for trial, and thus goes beyond the scope of a court's role when ruling on a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Yet, even in actions which directly involve a party's state of mind, summary judgment may still be appropriate where the issue before the court is primarily of a legal nature, rather than factual. *See, e.g., Jankovitz v. Des Moines Indep. Cmty. Sch. Dist.*, 421 F.3d 649, 653 (8th Cir.2005) (where the unresolved issues are primarily legal, rather than factual, summary judgment is particularly appropriate). This comports to the situation presented in this proceeding. The Plaintiff's Motion for Summary Judgment does not ask the Court to adjudicate the Debtor's mental state, but rather only raises an issue of law: whether the Debtor, by virtue of the prior state court decisions, is precluded from litigating in this Court the issue of his mental state? The Court, therefore, considers this matter ripe for resolution.

09-03043-rls    Doc 21    FILED 01/05/10    ENTERED 01/05/10 15:41:44    Page 6 of 13

H. Park Partners, LLC v. Christopher Frick
Case No. 09-3043

Both of the Parties agree that the legal question before the Court implicates the doctrine of collateral estoppel. This legal doctrine, also known as "issue preclusion," prevents the same parties or their privies from re-litigating facts and issues in a subsequent suit that were fully litigated in a prior suit. *Thompson v. Wing*, 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923 (1994). Collateral estoppel principles apply to bankruptcy proceedings and can be used in nondischargeability actions to prevent the re-litigation of issues already decided in a state court. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

However, when applying collateral estoppel principles from a state court judgment to a nondischargeability proceeding, the Supreme Court of the United States has held that the federal common law does not apply. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 374, 105 S.Ct. 1327, 1328, 84 L.Ed.2d 274 (1985); *see also Bay Area Factors, Inc. v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997). Instead, the bankruptcy courts, pursuant to the full faith and credit principles of 28 U.S.C. § 1738, must give the same issue preclusion effect to a state court judgment as it would be given under that state's law. *Id.* In this matter, the judgment the Plaintiff relies upon for the application of the collateral estoppel doctrine was entered by an Ohio court; consequently, the law in Ohio regarding collateral estoppel will be applied.

Under Ohio law, the party moving for the application of the doctrine of collateral estoppel must show the existence of four elements:

> (1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;
>
> (2) The issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment;
>
> (3) The issue in the present suit must have been identical to the issue involved in the prior suit; and

Page 7

H. Park Partners, LLC v. Christopher Frick
Case No. 09-3043

> (4) The party against whom estoppel is sought was a party or in privity with a party to the prior action.

*Murray v. Wilcox (In re Wilcox)*, 229 B.R. 411, 415-16 (Bankr. N.D.Ohio 1998), *citing Cashelmara Villas Ltd. Partnership v. DiBenedetto*, 87 Ohio App.3d 809, 813-14, 623 N.E.2d 213 (1993).

For each of the above four elements, it is readily apparent to the Court that the circumstances as they existed in the Parties' previous state-court case closely align themselves with this adversary proceeding, thereby establishing a *prima facie* case for the application of the collateral estoppel doctrine. First, for elements one and two, the facts presented to the Court show that in the state-court action, the Parties fully and directly litigated the issues necessary for a final judgment, with a bench trial being held, a written decision being issued and the judgment of the trial court being later upheld on appeal. Concerning the fourth element, an identity of parties, it is undisputed that both the Debtor, individually, and the Plaintiff were parties in the previous state court action.

Finally, in conformance with the third element, the issues presented in the prior state-court case have an exact identity to the issues which would be tried in this adversary proceeding. Namely, the findings of fact issued by the state court, particularly those regarding the Debtor's mental state, are of sufficient gravity so that they would, if transplanted to this adversary proceeding, sustain a determination of nondischargeability under the "willful" and "malicious" standard of § 523(a)(6). A closer look at the interplay between § 523(a)(6) and the decision rendered by the state court helps to shed light on this determination.

A "willful" injury under § 523(a)(6) requires a showing that the debtor acted with the specific intent to cause injury, or is substantially certain that injury will occur. *Grange Mut. Cas. Co. v. Chapman (In re Chapman)*, 228 B.R. 899, 908 (Bankr. N.D.Ohio 1998), *citing Kawaauhau v. Geiger*,

Page 8

523 U.S. 57, 61, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). Similarly, an injury arising from a debtor's "malicious" conduct will ensue "when a person acts in conscious disregard of one's duties or without just cause or excuse." *O'Brien v. Sintobin (In re Sintobin)*, 253 B.R. 826, 830 (Bankr. N.D.Ohio 2000). The findings made by the state court are entirely consistent with these definitions.

On the surface, the state court, in rendering judgment against the Debtor, used the proper trigger words, finding that the property leased by the Plaintiff "sustained malicious damage as a result of the Defendants vacating the premises, which damage was intentionally willfully and wantonly malicious." There is also no reason to suspect that the court's utilization of the trigger words, "willfully," "wantonly" and "malicious" were to be afforded a meaning separate from that required to sustain a finding of nondischargeabilty under § 523(a)(6). Particularly telling, the state court supported its findings as to the Debtor's mental state as follows:

> [The Debtor was] on a mission of his own. He was apparently resentful of the termination agreement and that he had to vacate the premises. He was late in vacating the premises to the Plaintiff even pursuant to the termination agreement. He did not return the keys to the Plaintiffs, they had to break into the premises to obtain possession. These actions show malice on his part and the circumstantial evidence is clear that Christopher Frick ordered the destruction of this property through individuals he hired to remove the restaurant equipment. The fact that it was his restaurant equipment that was being removed again ties the damage to Christopher Frick, as opposed to vandals or others theorized by the [Debtor's] counsel in argument.

(Doc. No. 18, Ex. 1, at pg. 3). There also exists a further commonality.

The findings made by the state court, having arisen after a trial on the Plaintiff's allegations that the Debtor willfully and wantonly intended to cause damage to the leased property, were based in tort, not contract. Likewise, the "willful" and "malicious" elements of § 523(a)(6) sound in tort. As

Page 9

H. Park Partners, LLC v. Christopher Frick
Case No. 09-3043

the United States Supreme Court stated, "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 977 140 L.Ed.2d 90 (1998), *citing* Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964). Accordingly, for these reasons, it is also reasonable to assume that the findings made by the state court regarding the Debtor's mental state would equate with the terms "willful" and "malicious" as used in § 523(a)(6).

Against the application of the collateral estoppel doctrine, the Debtor, noting that he was not physically present when the damage to the Plaintiff's rental property occurred, raised what may be viewed as a single argument in opposition: That because both the state court and the appellate court did not specifically adjudicate the issue of whether it was proper to impute liability to him vicariously, it is necessary for this Court to make such a determination. (Doc. No. 19). In support of this position, the Debtor called attention to these two matters.

First, the Debtor put forth that in the state-court proceeding, no evidence was produced to establish that he retained any supervisory or actual control over the parties who removed property at the leased property. *Id.* at 7. Similarly, the Debtor contends that no evidence exists as to the party who actually caused the damage to the property. *Id.* Thus, according to the Debtor, "while evidence was presented that injury to Plaintiff's Rental Unit was 'malicious and intentional,' no evidence was presented in either of the state court cases to establish that it was Debtor/Defendant who actually caused that damage." *Id.* at 8.

The position taken by the Debtor – that his lack of direct involvement in the damage caused to the Plaintiff's property shields him from a finding of nondischargability – is derived from the language of § 523(a)(6). In order to except a debt from discharge under § 523(a)(6), the statute specifies that the injury must have been made "by the debtor." It is generally acknowledged that this statutory prerequisite means that a debtor cannot be held liable for the acts of third parties,

Page 10

H. Park Partners, LLC v. Christopher Frick
Case No. 09-3043

notwithstanding that nonbankruptcy law would impute liability to the debtor. *See, e.g., Davis v. Melcher (In re Melcher)*, 319 B.R. 761, 777 (Bankr. D. D.C. 2004).

At the same time, there is no requirement in § 523(a)(6) that a debtor actually be the one who physically occasions damage to a creditor or to a creditor's property. *O'Brien v. Sintobin (In re Sintobin)*, 253 B.R. 826, 830 (Bankr. N.D.Ohio 2000). Instead, liability for a "willful" and "malicious" injury may be imposed under § 523(a)(6) when the debtor directs or actively encourages another person to commit a wrongful act. *Id.* This was the situation determined in the Parties' state-court litigation.

Pursuant to the findings made by the state court, as quoted in this decision throughout, the Debtor in his individual capacity was found to have acted both intentionally and maliciously with regards to the damage inflicted on the Plaintiff's property. The fact that other individuals may have actually caused the damage, or the fact that the property was leased by a corporate entity, was specifically discounted as an insulating factor, with the state court finding that the other entities were acting under the direction of the Debtor. Thus, for example, the appellate court stated:

> ... [W]e conclude that there was competent, credible evidence supporting the trial court's conclusion that *Frick personally ordered the destruction of the property* by individuals involved in moving equipment to vacate the premises.

*H. Park Partners, L.L.C. v. Frick*, 181 Ohio App.3d 691, 695 910 N.E.2d 527 (Ohio App. 2009) (emphasis added).

For this reason, the Debtor's position ignores the breadth of the state court's decision, with the liability against the Debtor not being imputed to him vicariously, but rather being assessed against him personally. Under this circumstance, the fact that the Debtor did not, himself, physically occasion

Page 11

H. Park Partners, LLC v. Christopher Frick
Case No. 09-3043

damage to Plaintiff's property provides no defense to the application of the collateral estoppel doctrine to this adversary proceeding.

In conclusion, the Court finds that the Plaintiff has established that, as set forth in its Motion for Summary Judgment, the Debtor, Christopher Frick, is collaterally estopped from contesting whether he acted 'willfully' and 'maliciously' for purposes of 11 U.S.C. § 523(a)(6). Therefore, the Debtor's liability to the Plaintiff, as adjudicated by the state court order, is a nondischargeable debt. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Motion of the Plaintiff, H. Park Partners, LLC, for Summary Judgment, be, and is hereby, GRANTED.

*IT IS FURTHER ORDERED* that the liability adjudicated against the Debtor, Christopher Frick, in the case captioned '*H. Parks Partners, L.L.C. v. Frick*, Case No. 2006CV327, July 7, 2008,' be, and is hereby, determined to be a NONDISCHARGEABLE DEBT pursuant to 11 U.S.C. § 523(a)(6).

Dated: January 5, 2010

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 12

# CERTIFICATE OF SERVICE

Copies were mailed this 5th day of January 2010 to:

Christopher H. Frick
28827 Georgia Road
Perrysburg, OH 43551

Louis J Yoppolo
1200 Edison Plaza
300 Madison Avenue
Toledo, OH 43604

H. Park Partners, LLC
27511 Holiday Lane
Perrysburg, OH 43551

Diane J Knoblauch
316 N. Michigan St., Ste 300
Toledo, OH 43604

Patricia A Kovacs
500 Madison Ave #525
Toledo, OH 43604

/s/Jennifer S Huff
Deputy Clerk, U.S. Bankruptcy Court